**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**SOUTHERN ILLINOIS BEVERAGE, INC.,**

     **Plaintiff,**

**v.**

**HANSEN BEVERAGE COMPANY,**

     **Defendant.**                         **Case No. 07-cv-391-DRH**

<u>**MEMORANDUM and ORDER**</u>

**HERNDON, Chief Judge:**

       This matter is before the Court on the motion for remand to state court brought by Plaintiff Southern Illinois Beverage, Inc., ("SIB") (Doc. 11) and the motion to dismiss or stay this litigation pending arbitration brought by Defendant Hansen Beverage Company ("Hansen") (Doc. 4).  SIB's motion for remand is **DENIED**. Hansen's motion for a stay of these proceedings pending arbitration is **GRANTED**, and this action is **STAYED** pending arbitration.

**I. <u>Introduction</u>**

       According to the complaint in this cause, SIB is a company based in Nashville, Illinois, that distributes beverages to locations in southern Illinois pursuant to distribution/franchise agreements with beverage manufacturers.  Hansen is a manufacturer of assorted beverages, including a non-alcoholic beverage called "Monster."  In 2005, SIB entered into an agreement with Hansen whereby SIB would sell and distribute Monster in an exclusive sales territory consisting of six Illinois

counties.  In 2006, Hansen cancelled the agreement and began selling to third parties the right to distribute Monster in the contractual sales territory.  In 2007, SIB filed this action in the Circuit Court of the Twentieth Judicial Circuit, Washington County, Illinois, asserting claims under the Illinois Franchise Disclosure Act of 1987 ("IFDA"), 815 ILCS 705/1-705/44, and for breach of the duty of good faith and fair dealing.  Hansen has removed the case to this Court, asserting federal subject matter jurisdiction in diversity pursuant to 28 U.S.C. § 1332, and has moved for dismissal or a stay of these proceedings pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-307.  SIB in turn has moved for remand of the case to state court for lack of subject matter jurisdiction.  Both SIB's motion for remand and Hansen's motion for dismissal or a stay of these proceedings pending arbitration have been fully briefed and are ripe for decision.  The Court has reviewed the submissions of the parties carefully and now rules as follows.

## II. Discussion

### A.    Motion for Remand

As noted, SIB challenges the existence of federal subject matter jurisdiction in this case.  Because "issues affecting a federal court's subject matter jurisdiction are 'fundamentally preliminary,'" the Court will address first the question of subject matter jurisdiction before turning to Hansen's arguments concerning dismissal or a stay of these proceedings pending arbitration.  *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, **241 F.R.D. 305, 309 (S.D.**

**Ill. 2007) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).**

**See also *Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-592-JPG, 2007 WL 2746612, at \*1 (S.D. Ill. Sept. 18, 2007) (quoting *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002)) ("Jurisdiction is the . . . power to declare law, . . . and without it the federal courts cannot proceed."); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 845 (S.D. Ill. 2006) (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1048 (E.D. Wis. 2001)) (noting the "constitutional importance" of the rule that a district court should resolve issues pertaining to federal subject matter jurisdiction "first," before addressing any other aspect of a case).**

### 1.    Legal Standard

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." **28 U.S.C. § 1441(a)**.  A federal court may exercise jurisdiction in diversity if all parties to an action are of completely diverse citizenship, that is, no plaintiff is a citizen of the same state as any defendant, and an amount in excess of $75,000, exclusive of interest and costs, is in controversy. **See 28 U.S.C. § 1332(a); *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1017 (7th Cir. 2004); *Sabo v. Dennis Techs., LLC*, No. 07-cv-283-DRH, 2007 WL 1958591, at \*2 (S.D. Ill. July 2, 2007)**.  A party

seeking removal has the burden of establishing federal jurisdiction.  ***See In re Brand Name Prescription Drugs Antitrust Litig.***, **123 F.3d 599, 607 (7th Cir. 1997);** ***Fiore v. First Am. Title Ins. Co.***, **No. 05-CV-474-DRH, 2005 WL 3434074, at \*2 (S.D. Ill. Dec. 13, 2005).** **"'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.' Put another way, there is a strong presumption in favor of remand."** . "All doubts about the propriety of removal are to be resolved in favor of remand." ***Clevenger v. Eastman Chem. Co.***, **No. 07-cv-148-DRH, 2007 WL 2458474, at \*1 (S.D. Ill. Aug. 24, 2007).** ***See also Ford v. Keck***, **No. 06-cv-667-DRH, 2007 WL 1022003, at \*1 (S.D. Ill. Apr. 2, 2007);** ***Littleton v. Shelter Ins. Co.***, **No. 99-912-GPM, 2000 WL 356408, at \*1 (S.D. Ill. Mar. 9, 2000)**.

### 2.    Amount in Controversy

In this instance the record shows that SIB is an Illinois citizen and Hansen is a citizen of Delaware and California, ***see* 28 U.S.C. § 1332(c)(1)**, so that complete diversity of citizenship exists in this case.  What is principally in dispute here is whether an amount in excess of $75,000, exclusive of interest and costs, is in controversy.  The standard under which the amount in controversy is evaluated for diversity purposes in a removed case is well settled.  The amount in controversy is determined by an evaluation of the claims described in the complaint, along with the record as a whole, as of the time a case was removed.  ***See Andrews v. E.I. Du Pont De Nemours & Co.***, **447 F.3d 510, 515 (7th Cir. 2006);** ***Geschke v. Air***

***Force Ass'n*, 425 F.3d 337, 341 (7th Cir. 2005); *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000); *Durbin v. Wal-Mart Stores, Inc.*, No. 1:04-CV-01570-JDT-TA, 2004 WL 2750256, at \*1 (S.D. Ind. Oct. 27, 2004)**. In the event that any challenges are made regarding the amount in controversy, the party asserting the existence of federal subject matter jurisdiction has the burden of affirmatively establishing such jurisdiction. ***See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005)**. A removing defendant "need not show that the plaintiff will prevail or collect more than $75,000 if he does." ***Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)) (emphasis omitted)**. Rather, the burden is to show "what the plaintiff hopes to get out of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold." *Id.* ***See also Brill*, 427 F.3d at 449 ("The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.")**. A case must remain in federal court unless it is "legally certain" that the controversy is worth less than the jurisdictional amount. ***Meridian Sec. Ins. Co.*, 441 F.3d at 543**.

  In this case, Count I and Count II of SIB's complaint allege violations of

IFDA by Hansen, while Count III alleges a breach of the duty of good faith and fair

dealing by Hansen.  This requires the Court in turn to examine briefly SIB's standing

to sue under IFDA.   Section 3 of IFDA defines a "franchise" according to three

criteria:

> "Franchise" means a contract or agreement, either expressed or
> implied, whether oral or written, between two or more persons by
> which:
> (a) a franchisee is granted the right to engage in the business of offering,
> selling, or distributing goods or services, under a marketing plan or
> system prescribed or suggested in substantial part by a franchisor; and
> (b) the operation of the franchisee's business pursuant to such plan or
> system is substantially associated with the franchisor's trademark,
> service mark, trade name, logotype, advertising, or other commercial
> symbol designating the franchisor or its affiliate; and
> (c) the person granted the right to engage in such business is required
> to pay, directly or indirectly, a franchise fee of $500 or more.

**815 ILCS 705/3(1)**.  For purposes of the statute, the term "franchisor" means "a

person who grants a franchise and includes a subfranchisor with regard to its

relationship with a franchisee, unless stated otherwise in this Act."  **815 ILCS**

**705/3(3)**.   Under the statute, a "franchisee" is "a person to whom a franchise is

granted and includes, unless stated otherwise in this Act:  (a) a subfranchisor with

regard to its relationship with a franchisor and (b) a subfranchisee with regard to its

relationship with a subfranchisor."  **815 ILCS 705/3(2)**.  It appears from the record

that Hansen did not grant a franchise to distribute Monster directly to SIB and

instead the franchise arose through an agreement between Hansen and a company

called Folsom Distributing ("Folsom") that authorized Folsom to appoint

subdistributors of Monster, including SIB.   Nonetheless, as the language of IFDA

makes clear, a subfranchisee possesses the same rights as a franchisee under the statute.  ***See*** **815 ILCS 705/3(2).  *See also* 815 ILCS 705/43 (mandating liberal construction of IFDA to effect its purpose of protecting franchisees); *Salkeld v. V.R. Bus. Brokers*, 548 N.E.2d 1151, 1152-57 (Ill. App. Ct. 1989) (holding that a sublicense agreement created a franchise relationship for IFDA purposes)**.  SIB has properly alleged the existence of a franchise agreement between itself and Hansen, and the parties do not seriously dispute the existence of such an agreement.  Accordingly, the Court assumes that a valid franchise agreement was created between the parties.

Turning then to the issue of the amount in controversy, Hansen argues that the jurisdictional amount for diversity purposes is satisfied because each of the three counts in SIB's complaint pleads for damages in excess of $50,000; additionally, Hansen points to a potential award of attorneys' fees under IFDA and a potential award of punitive damages as to SIB's claim for breach of the duty of good faith and fair dealing as satisfying the jurisdictional amount.  The Court agrees in part and disagrees in part.  Count I of SIB's complaint alleges violations of certain technical requirements of IFDA set out in Section 5 and Section 10 of the statute.  Section 5 of the statute provides, in relevant part,

> It is unlawful for any person to offer or sell any franchise which is required to be registered under this Act without first providing to the prospective franchisee at least 14 days prior to the execution by the prospective franchisee of any binding franchise or other agreement, or at least 14 days prior to the receipt by such person of any consideration, whichever occurs first, a copy of a disclosure statement

meeting the requirements of this Act and registered by the [Illinois Attorney General], together with a copy of all proposed agreements relating to the sale of the franchise.

**815 ILCS 705/5(2).** ***See also*** **815 ILCS 705/16 (outlining the form and contents of the required disclosure statement)**. Section 10 of IFDA provides, in relevant part,

> No franchisor may sell or offer to sell a franchise in this State if (1) the franchisee is domiciled in this State or (2) the offer of the franchise is made or accepted in this State and the franchise business is or will be located in this State, unless the franchisor has registered the franchise with the [Illinois Attorney General] by filing such form of notification and disclosure statement as required under Section 16.
> The registration of a franchise shall become effective on the 21st day after the date of the filing of the required materials, unless the [Illinois Attorney General] has denied registration under subdivision (a) (3) of Section 22.
> Annually, but not later than one business day before the anniversary date of the registration, the franchisor shall file the disclosure statement updated as of a date within 120 days of the anniversary date of the registration.

**815 ILCS 705/10**. Count I of SIB's complaint alleges that Hansen violated Section 5 of IFDA by failing to furnish the required disclosure statement and violated Section 10 of IFDA by failing to register with the Illinois Attorney General and failing to file the required annual reports. The remedy furnished by IFDA in a private civil action for a violation of Section 5 or Section 10 of the statute is an award of actual damages for loss caused by the violation, together with rescission of a franchise agreement and an award of reasonable attorneys' fees. ***See*** **815 ILCS 705/26**.

Count II of SIB's complaint alleges that Hansen violated IFDA by terminating or failing to renew a franchise without good cause. ***See*** **815**

ILCS 705/19; 815 ILCS 705/26; *H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.*, No. 99 C 5437, 2002 WL 31018302, at *3 (N.D. Ill. Sept. 9, 2002); *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1393-94 (N.D. Ill. 1996); *Dudley Enters., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 504 (N.D. Ill. 1993).   The remedy furnished by the statute is actual damages and reasonable attorneys' fees. *See* 815 ILCS 705/26.   Finally, Count III of SIB's complaint is an alternative statement of Count II of the complaint, alleging that Hansen breached its duty of good faith and fair dealing by terminating the franchise with SIB.  It is proper to plead IFDA claims with common-law claims because, as the statute expressly provides, it does not does not preempt remedies under the common law and other statutes. *See* 815 ILCS 705/28 (providing that "[n]othing in [IFDA] shall limit any liability which may exist by virtue of any other statute or under common law if this Act were not in effect.").   In general, Illinois law implies a duty of good faith and fair dealing between the parties to a contract. *See LaSalle Nat'l Bank v. Metropolitan Life Ins. Co.*, 18 F.3d 1371, 1375 (7th Cir. 1994) (citing *Anderson v. Burton Assocs., Ltd.*, 578 N.E.2d 199 (Ill. App. Ct. 1991)); *Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 690 (Ill. 1958); *First Nat'l Bank of Cicero v. Sylvester*, 554 N.E.2d 1063, 1069 (Ill. App. Ct. 1990).  Where a contract vests a party with discretion, the implied covenant of good faith and fair dealing requires that such contractual discretion be exercised reasonably and not arbitrarily or capriciously.   "[T]he doctrine of good faith

performance imposes a limitation on the exercise of discretion vested in one of the parties to a contract . . . . In describing the nature of that limitation the courts of [Illinois] have held that a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." **Dayan v. McDonald's Corp., 466 N.E.2d 958, 972 (Ill. App. Ct. 1984). See also Foster Enters., Inc. v. Germania Fed. Sav. & Loan Ass'n, 421 N.E.2d 1375, 1381 (Ill. App. Ct. 1981) (stating that, for purposes of the duty of good faith and fair dealing, "[w]here contractual discretion is exercised in bad faith, the contract is breached[.]").** Correspondingly, where a contract vests a party with discretion to terminate the contract, that discretion must be exercised in good faith. **See Greer Props., Inc. v. LaSalle Nat'l Bank, 874 F.2d 457, 460-61 (7th Cir. 1989); McDonald's Corp. v. C.B. Mgmt. Co., 13 F. Supp. 2d 705, 711-12 (N.D. Ill. 1998); Dayan, 466 N.E.2d at 972-73**.  SIB alleges that Hansen abused its contractual discretion by terminating or failing to renew the franchise agreement, and seeks actual and punitive damages for Hansen's alleged breach of the duty of good faith and fair dealing.

As a general rule, of course, a plaintiff's separate claims against a defendant may be aggregated to satisfy the jurisdictional minimum amount for diversity purposes.  **See Herremans v. Carrera Designs, Inc., 157 F.3d 1118, 1121 (7th Cir. 1998) (quoting 28 U.S.C. § 1332(a)) (stating that "[t]he diversity**

statute confers federal jurisdiction over 'civil actions' satisfying the required minimum amount in controversy, . . . not over counts, thus permitting the plaintiff to aggregate the stakes in his separate claims or counts to come up to the minimum." ); *Countrywide Home Loans, Inc. v. Stewart Title Guar. Co.*, No. 06-C-1254, 2007 WL 906154, at *2 (E.D. Wis. Mar. 23, 2007) (citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969)) ("Two or more claims between a single plaintiff and a single defendant may be aggregated for purposes of determining whether the jurisdictional amount requirement has been met for removal purposes.").  Naturally, the rule permitting aggregation of a plaintiff's claims against a single defendant to satisfy the jurisdictional amount does not apply where claims are merely alternative bases of recovery for the same harm and the plaintiff cannot be awarded damages for all of the alternative claims. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir. 1997).  In this case, however, although Count II and Count III of SIB's complaint are merely alternative bases for recovery for the same harm, namely, Hansen's allegedly unlawful termination of its franchise agreement with SIB, Count I is based on a different harm than Count II and Count III, namely, alleged violations of Section 5 and Section 10 of IFDA by Hansen. As discussed, each count of SIB's complaint contains a demand for damages in excess of $50,000, and the Court must accept as true SIB's good-faith estimate that its damages exceed $100,000 for, on the one hand, the violations of Section 5 and Section 10 of IFDA alleged in Count I of its complaint and, on the other hand, the

allegedly unlawful termination of the franchise agreement asserted in Count II and Count III of the complaint. **See 10 Ill. Prac.,** *Civil Discovery* **§ 20.2 (noting that a demand for damages in excess of $50,000 in a complaint must reflect a good-faith belief that damages exceed that amount).** *See also Hanlon v. XY Tool & Die, Inc.,* **No. 04 C 410, 2004 WL 838035, at \*2 (N.D. Ill. Apr. 16, 2004) (holding that the jurisdictional amount for diversity purposes was satisfied in a removed case where the complaint contained three counts, each of which pleaded for damages in excess of $50,000, and the claims involved distinct causes of action based on wrongful death and survival).** Naturally, had SIB wished to avoid removal of its claims in diversity, it could have done so by filing with its complaint in state court a binding stipulation or affidavit reducing its prospective recovery below the jurisdictional minimum for diversity purposes. **See** *Chase v. Shop 'N Save Warehouse Foods, Inc.,* **110 F.3d 424, 430 (7th Cir. 1997) ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints[.]").** However, SIB did not do that, and the post-removal affidavit that it filed purporting to reduce the damages it seeks in this case to $70,000 is ineffective, of course, to oust federal subject matter jurisdiction. **See** *id.* **at 429 (quoting** *St. Paul Mercury***, 303 U.S. at 292) ("[T]he district court is not deprived of jurisdiction where . . . 'the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount[.]'").**

The Court notes that it seems unlikely, on the state of the record, that substantial amounts of either attorneys' fees or punitive damages are in controversy in this case for purposes of the jurisdictional minimum amount under the diversity statute.  Although, as noted, IFDA permits recovery of reasonable attorneys' fees in a private civil action by a prevailing franchisee, the settled rule in this Circuit is that, while attorneys' fees may properly be reckoned into the jurisdictional amount for diversity purposes, in a case removed from state court to federal court only those fees incurred before removal may properly be so considered.  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006); *Smith v. American Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 896-97 (7th Cir. 2003); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958-59 (7th Cir. 1998); *West Bend Elevator, Inc. v. Rhone-Poulenc S.A.*, 140 F. Supp. 2d 963, 969 (E.D. Wis. 2000); *Godfrey v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 98 C 2956, 1999 WL 104245, at *1 (N.D. Ill. Feb. 24, 1999).  SIB's post-removal affidavit attests that its attorneys' fees as of the date of the removal of this case amount to less than $2,000, well short of the jurisdictional minimum amount. Although, as noted, the Court may not rely on the affidavit as evidence that SIB's prospective recovery in this case is limited to $70,000, the Court is entitled to rely on the affidavit as evidence regarding the state of affairs with respect to SIB's attorneys' fees as of the time this case was removed. *See Harmon v. OKI Sys.*, 115

**F.3d 477, 479-80 (7th Cir. 1997) (noting that, in evaluating whether a case has been properly removed in diversity jurisdiction, a court can consider post-removal evidence that "sheds light on the situation which existed when the case was removed."); *Cassens v. Cassens*, 430 F. Supp. 2d 830, 834 n.2 (S.D. Ill. 2006) ("[A] court is entitled to consider all facts that shed light on the existence of subject matter jurisdiction" at the time of removal).**

As regards punitive damages, such damages "may sometimes be taken into account in deciding whether the proper amount is in controversy." ***Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711-12 (7th Cir. 2007) (quoting *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000)).** "Where punitive damages are required to satisfy the jurisdictional requirement in a diversity case, a two-part inquiry is necessary.  The first question is whether punitive damages are recoverable as a matter of state law.  If the answer is yes, the court has subject matter jurisdiction unless it is clear . . . beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." ***Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (quoting *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211-12 (7th Cir. 1995)).** With respect to SIB's IFDA claims, punitive damages are not available under that statute. ***See Zeidler v. A&W Rests., Inc.*, No. 99 C 2591, 2000 WL 122616, at \*3 (N.D. Ill. Jan. 25, 2000); *Bonfield v. Aamco Transmissions, Inc.*, 708 F. Supp. 867, 887-88 (N.D. Ill. 1989).** As to SIB's

claim for breach of the duty of good faith and fair dealing, this claim sounds in contract. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992); *Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1348 (7th Cir. 1983); *Mid-America Tile, Inc. v. Graniti Fiandre, S.P.A.*, No. 92 C 2309, 1992 WL 329460, at *3 (N.D. Ill. Nov. 4, 1992); *Resolution Trust Corp. v Holtzman*, 618 N.E.2d 418, 424 (Ill. App. Ct. 1993). Under Illinois law, punitive damages generally are not available in contract actions, *see Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998); *C-B Realty & Trading Corp. v. Chicago & N.W. Ry. Co.*, 682 N.E.2d 1136, 1143-44 (Ill. App. Ct. 1997); *Ryan v. City of Chicago*, 654 N.E.2d 483, 492 (Ill. App. Ct. 1995), save in the "unusual" case where "a breach of contract itself . . . constitute[s] . . . an independent wilful tort . . . [such] that punitive damages may be recovered." *Debolt v. Mutual of Omaha*, 371 N.E.2d 373, 376 (Ill. App. Ct. 1978) (citing *Ledingham v. Blue Cross Plan for Hosp. Care of Hosp. Serv. Corp.*, 330 N.E.2d 540 (Ill. App. Ct. 1975)). *See also Kohlmeier v. Shelter Ins. Co.*, 525 N.E.2d 94, 103 (Ill. App. Ct. 1988); *Tobolt v. Allstate Ins. Co.*, 393 N.E.2d 1171, 1179 (Ill. App. Ct. 1979).[1]

---

1.The Court assumes that attorneys' fees are unavailable as to Count III of SIB's complaint. Consistent with general common-law principles, under Illinois law attorneys' fees are recoverable only if they are allowed by the parties' contract or are authorized by statute. *See Avedas, Inc. v. Intouch Group, Inc.*, No. 94 C 6923, 1995 WL 234561, at *6 (N.D. Ill. Apr. 19, 1995) (citing *Leahy Realty Corp. v. American Snack Foods Corp.*, 625 N.E.2d 956, 968 (Ill. App. Ct. 1993)). The Court has not been directed to any contract that would permit SIB to recover attorneys' fees with respect to its claim for breach of the duty of good faith and fair dealing.

In this case, SIB alleges no facts with respect to its claim for breach of the duty of good faith and fair dealing that would establish the existence of an independent tort for which punitive damages would be available.  The gravamen of SIB's allegations is simply that Hansen breached its franchise agreement with SIB by improperly exercising its contractual discretion in terminating the agreement. These allegations are not sufficient to establish a right to punitive damages.  ***See Anthony***, **75 F.3d at 316 (holding that punitive damages would not satisfy the amount in controversy where the complaint failed to allege "aggravated or egregious" conduct such as to warrant punitive damages under Illinois law); *Rendina v. Falco/Rendina/Erickson*, No. CIVA 05 C 7258, 2006 WL 2578926, at \*\*5-6 (N.D. Ill. Sept. 5, 2006) (dismissing a complaint for breach of contract where the allegations of the complaint were insufficient to support an award of punitive damages under Illinois law); *Sharrow v. General Motors Acceptance Corp.*, 938 F. Supp. 518, 520-21 (C.D. Ill. 1996) ("vague" allegations in support of a demand for punitive damages on claims of breach of contract failed to show that the jurisdictional amount was satisfied); *Schuler v. C.R. Indus.*, No. 92 C 2687, 1992 WL 91937, at \*\*1-2 (N.D. Ill. Apr. 30, 1992) (in a removed case, holding that a demand for punitive damages for breach of contract did not satisfy the amount in controversy where the plaintiff failed to allege any facts showing malice, wantonness, or oppression by the defendant).**  Nevertheless, despite the fact that neither attorneys' fees nor punitive damages are likely to satisfy

the jurisdictional amount, the Court concludes that where SIB's complaint pleads for damages in excess of $50,000 with respect to both its claim for violations of Section 5 and Section 10 of IFDA and its claim for unlawful termination of the franchise agreement under both IFDA and the common-law duty of good faith and fair dealing, an amount in excess of $75,000, exclusive of interest and costs, is in controversy in this case.  Accordingly, SIB's motion for remand of this case to state court for lack of federal subject matter jurisdiction in diversity will be denied.

**B.      Dismissal or Stay Pending Arbitration**

As noted, Hansen has moved under the FAA for dismissal or a stay of these proceedings pending arbitration.  Hansen contends that under an arbitration provision in its Distribution Agreement ("Agreement") with Folsom, which authorized Folsom to contract with SIB as a subdistributor under the Agreement, SIB is required to arbitrate all disputes arising from termination of the Agreement.  SIB argues that, as a non-signatory to the Agreement, it cannot be required to arbitrate thereunder.  The Court concludes that under the doctrine of estoppel SIB is bound by the arbitration provision in the Agreement.  Accordingly, these proceedings will be stayed pending arbitration of SIB's claims against Hansen.

Section 2 of the FAA provides, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." **9 U.S.C. § 2**.  Section 3 of the statute

provides,

> If any suit or proceeding be brought in any of the courts of the United
> States upon any issue referable to arbitration under an agreement in
> writing for such arbitration, the court in which such suit is pending,
> upon being satisfied that the issue involved in such suit or proceeding
> is referable to arbitration under such an agreement, shall on application
> of one of the parties stay the trial of the action until such arbitration has
> been had in accordance with the terms of the agreement, providing the
> applicant for the stay is not in default in proceeding with such
> arbitration.

**9 U.S.C. § 3**.  Section 4 of the statute provides, in pertinent part, "A party aggrieved

by the alleged failure, neglect, or refusal of another to arbitrate under a written

agreement for arbitration may petition any United States district court which, save

for such agreement, would have jurisdiction under Title 28, in a civil action or in

admiralty of the subject matter of a suit arising out of the controversy between the

parties, for an order directing that such arbitration proceed in the manner provided

for in such agreement." **9 U.S.C. § 4**.  The Federal Rules of Civil Procedure govern

proceedings under the FAA only to the extent not provided for in the FAA itself. ***See***

**Fed. R. Civ. P. 81(a)(3)**.  Section 6 of the FAA provides:  "Any application to the

court hereunder shall be made and heard in the manner provided by law for the

making and hearing of motions, except as otherwise herein expressly provided." **9**

**U.S.C. § 6**.  Accordingly, a court must review parties' motion papers under the

relevant portions of the FAA, applying the Federal Rules of Civil Procedure as a

supplement where the FAA is silent.  ***See Health Servs. Mgmt. Corp. v. Hughes***, **975 F.2d 1253, 1258 (7th Cir. 1992) ("Thus, the language of Section 6 preempts the applicability of the Federal Rules[.]")**.

Under the FAA, arbitration may be compelled if the following three elements are shown:  a written agreement to arbitrate; a dispute within the scope of the arbitration agreement; and a refusal to arbitrate.  ***See Zurich Am. Ins. Co. v. Watts Indus., Inc.***, **466 F.3d 577, 580 (7th Cir. 2006);** ***Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.***, **174 F.3d 907, 909-10 (7th Cir. 1999);** ***Olson v. Jenkens & Gilchrist***, **461 F. Supp. 2d 710, 726 (N.D. Ill. 2006)**.  The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." ***Gilmer v. Interstate/Johnson Lane Corp.***, **500 U.S. 20, 24 (1991).  *See also* Volkswagen of Am., Inc. v. Sud's Of Peoria, Inc.**, **474 F.3d 966, 970 (7th Cir. 2007) (quoting** ***Shearson/American Express, Inc. v. McMahon***, **482 U.S. 220, 225 (1987)) ("The FAA was enacted in 1925 against the backdrop of 'centuries of judicial hostility to arbitration agreements.'")**.  Before a court can stay proceedings in favor of arbitration, it must decide whether the proceeding is "referable to arbitration" within the meaning of Section 3 of the FAA, and in making this determination the court "must consider only the issues relating to arbitrability." ***Hawkins v. Aid Ass'n for Lutherans***, **338 F.3d 801, 807 (7th Cir. 2003) (citing**

***We Care Hair Dev., Inc. v. Engen***, **180 F.3d 838, 844 (7th Cir. 1999)**).  Put differently, the court merely determines whether the underlying substantive disputes are, under the law, properly resolved in arbitration; if so, whether the various underlying claims and defenses are meritorious or not is not the subject of the court's analysis.  ***See id.* (citing, inter alia, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)**).

Whether parties have agreed to arbitrate is a question normally answered by a court rather than by an arbitrator, and the issue is controlled by state-law principles governing contract formation.  ***See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Reliance Ins. Co. v. Raybestos Prods. Co.*, 382 F.3d 676, 678-79 (7th Cir. 2004); *Hill's Pet Nutrition, Inc. v. Fru-Con Constr. Corp.*, 101 F.3d 63, 65-66 (7th Cir. 1996)**.  Nevertheless, in determining arbitrability a court should be mindful that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements" and "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"; thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" ***Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  *See also Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998) ("[O]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of**

**arbitration.")**.

Turning first to the matter of whether the arbitration clause at issue covers the substance of SIB's claims, the Court concludes that it does.   The arbitration clause in the Agreement between Hansen and Folsom, which has been submitted to the Court as an exhibit to the affidavit of Hansen's president, Hilton Schlosberg, provides in pertinent part that "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or the breach or termination hereof shall be settled by binding arbitration conducted by JAMS/Endispute, ('JAMS') in accordance with JAMS Comprehensive Arbitration Rules and Procedures (the 'Rules')." Agreement ¶ 19.  SIB does not seriously dispute that the arbitration clause is broad enough to cover the dispute at hand, although as noted it argues that as a non-signatory to the Agreement it cannot be compelled to arbitrate thereunder. Seventh Circuit precedent makes clear that broad arbitration provisions cover all disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." ***Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993).  *See also Northern Ill. Gas Co. v. Airco, Indus. Gases, Div. of Airco Inc.*, 676 F.2d 270, 271, 274-75 (7th Cir. 1982) (enforcing a broad arbitration provision stating that "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach hereof, shall be decided by arbitration in accordance with the Rules of the American Arbitration Association then**

obtaining, unless the parties mutually agree otherwise."); *Cecala v. Moore*, 982 F. Supp. 609, 611, 614 (N.D. Ill. 1997) (enforcing a mediation clause in a contract stating that "'any and all disputes or claims . . . arising out of or relating to' the contract would be submitted to mediation."); *Johnson v. Baumgardt*, 576 N.E.2d 515, 520 (Ill. App. Ct. 1991)) ("Arbitration clauses . . . that provide that all claims 'arising out of' or 'relating to' an agreement are subject to arbitration have been properly categorized as 'generic' arbitration clauses . . . . A dispute is within the scope of a 'generic' arbitration clause if it arises out of the subject matter of the contract."). *Accord Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) ("[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute.") (emphasis omitted).  SIB does not contest, and the Court has no difficulty in finding, that the claims in this case arise out of or relate to the Agreement or the breach or termination of the Agreement and therefore are within the scope of the arbitration provision of the Agreement.

Having concluded that the claims in this case are within the scope of the arbitration clause of the Agreement, the Court turns to the heart of the parties' dispute about arbitrability, namely, whether as a non-signatory to the Agreement SIB can properly be required to arbitrate thereunder.  The Court concludes that under

Seventh Circuit precedent SIB is required to arbitrate the claims raised here. Although, as noted, in determining whether the parties have agreed to arbitrate, courts generally apply ordinary state-law principles governing contract formation, when, as in this instance, it is undisputed that there is a valid arbitration agreement and the issue is whether that agreement applies to a non-signatory such as SIB, courts look to federal precedent applying the FAA to determine arbitrability. **See, e.g., Eurosteel Corp. v. M/V MILLENIUM FALSON**, No. 01 C 8817, 2002 WL 1972266, at *2 (N.D. Ill. Aug. 20, 2002) ("Whether parties have agreed to submit their claims to arbitration is a matter of contract interpretation that is determined by the courts . . . . This determination is made by applying federal substantive law of arbitrability."); **Hoffman v. Deloitte & Touche, LLP**, 143 F. Supp. 2d 995, 1004 n.4 (N.D. Ill. 2001) (citing **International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH**, 206 F.3d 411, 417 n.4 (4th Cir. 2000)) ("State contract law governs questions regarding the formation and validity of the contracts generally, while federal substantive law governs questions of arbitrability under the FAA.  Because the determination of whether defendants can enforce the arbitration clauses presents no issue of contract formation or validity, the federal substantive law of arbitrability governs."). **Accord R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.**, 384 F.3d 157, 160 n.1 (4th Cir. 2004) ("Because the determination of whether . . . a nonsignatory . . . is bound by the . . . contract presents no state law question of

**contract formation or validity, we look to the federal substantive law of arbitrability to resolve [the] question" of whether the non-signatory can be compelled to arbitrate under the contract);** *Fujian Pac. Elec. Co. v. Bechtel Power Corp.***, No. C 04-3126 MHP, 2004 WL 2645974, at \*3 (N.D. Cal. Nov. 19, 2004) ("[A] court must look to . . . federal substantive law of arbitrability . . . to resolve the question of whether a nonsignatory is bound by an arbitration agreement.")**.

As noted, SIB argues that, because it is a non-signatory to the Agreement containing the arbitration provision, it cannot be compelled to arbitrate thereunder. As a general proposition, non-signatories to an arbitration agreement are not required to arbitrate their disputes with signatories.  "[A]rbitration is contractual by nature – 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Zurich Am. Ins. Co. v. Watts Indus., Inc.***, 417 F.3d 682, 687 (7th Cir. 2005) (quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n***, 64 F.3d 773, 776 (2d Cir. 1995))**.   However, there are exceptions to this rule.  Because arbitration is a creature of contract law, there are certain principles of contract law that federal courts have applied in compelling arbitration even when there is not a written arbitration agreement between the relevant parties.  Specifically, "there are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others:  (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Id.*

(citing *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023,
1029 (7th Cir. 2002)).  The Court concludes that under principles of estoppel SIB
is required to arbitrate its claims against Hansen.

The United States Court of Appeals for the Seventh Circuit has
explained that "[a] nonsignatory party is estopped from avoiding arbitration if it
knowingly seeks the benefits of the contract containing the arbitration clause."
*Zurich Am. Ins. Co.*, 417 F.3d at 688.  *See also Hughes Masonry Co. v.
Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981)
(estopping a signatory to a contract containing an arbitration clause from
maintaining that the arbitration clause did not apply to its claim against a
non-signatory when the agreement at issue formed the "very basis" of the claim).
The touchstone of this form of estoppel is whether the non-signatory has brought suit
against the signatory premised upon the agreement that contains the arbitration
clause at issue, thus seeking the agreement's direct benefits.  "[C]aselaw consistently
requires a direct benefit under the contract containing an arbitration clause before
a reluctant party can be forced into arbitration." *Zurich Am. Ins. Co.*, 417 F.3d at
688 (citing *Thomson-CSF*, 64 F.3d at 779) (emphasis omitted).  Thus, in the
arbitration context, a party may be estopped from asserting that an arbitration clause
contained in a particular document is inapplicable when that same party
simultaneously claims the direct benefit of that contract.  This estoppel doctrine
exists to prevent a litigant from unfairly receiving the benefit of a contract while at

the same time repudiating what it believes to be a disadvantage in the contract, namely the contractual arbitration provision.  "[I]t would be manifestly inequitable to permit [a plaintiff] to both claim that [a defendant] is liable . . . for its failure to perform . . . contractual duties" under an agreement containing an arbitration clause "and at the same time . . . [seek] to avoid arbitration of claims clearly within the ambit of the arbitration clause.  'In short, [plaintiff] cannot have it both ways.  [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage.'" ***Hughes Masonry Co.*, 659 F.2d at 838-39 (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966))**.  "To allow [a litigant] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." ***Id.* at 839 (quoting *Avila Group, Inc. v. Norma J. of Cal.*, 426 F. Supp. 537, 542 (S.D.N.Y. 1977))**.

The Court finds ***In re Oil Spill by Amoco Cadiz Off Coast of France March 16, 1978*, 659 F.2d 789 (7th Cir. 1981)**, instructive in this case, even though the decision does not specifically refer to the doctrine of estoppel.  In ***Amoco Cadiz*** the Seventh Circuit Court of Appeals compelled Amoco International ("International"), a non-signatory to a contract between a tugboat company and Amoco Transport ("Transport"), International's parent company, to arbitrate its claim against the tugboat company despite International's contention that it "never entered into any agreement with [the tugboat company] and has never consented to

have its disputes resolved by arbitration" as required under the agreement between the tugboat company and Transport. **See id. at 795**. The court reached this conclusion because "[b]y its own allegations" International's stake in the controversy was as Transport's agent. **Id. at 795-96**. "Having alleged an agency relationship as a basis for its standing in the suit, [International] cannot slough off that relationship at will." **Id. at 796**. "It would advance neither judicial economy nor the purposes of the federal arbitration act to permit International to assert in a judicial forum claims grounded upon its alleged relationship to Transport and to allow it to disavow the relationship for purposes of arbitration, or to allow Transport to defeat the effect of an arbitration agreement by joining a nonsignatory as a party-plaintiff in its complaint." **Id.** Thus, the court held that International, despite being a non-signatory to the contract between the tugboat company and Transport containing the arbitration provision, was required to arbitrate its claims against the tugboat company.

Case law from sister circuits also is instructive in this instance. For example, in **International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH**, the United States Court of Appeals for the Fourth Circuit addressed the estoppel doctrine in the context of arbitration agreements. The court held that "[i]n the arbitration context, the doctrine [of estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained

that other provisions of the same contract should be enforced to benefit him." **206 F.3d at 418**. "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *Id.* In *International Paper*, a buyer of an industrial saw sued the manufacturer of the saw on the basis of a contract, which contained an arbitration clause, between the saw's distributor and manufacturer. *See id. at 413*. The *International Paper* court found that the distributor-manufacturer contract provided the factual foundations for the claims asserted by the non-signatory plaintiff against the signatory defendant. *See id. at 418*. Because the plaintiff's "entire case hinge[d] on its asserted rights under the . . . contract," the court held, the plaintiff could "not seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of the contract be arbitrated." *Id*. Simply put, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause . . . when it receives a . . . direct benefit . . . from a contract containing an arbitration clause." *Id*. Accordingly, the court held that the non-signatory plaintiff was properly ordered to arbitrate under the doctrine of estoppel. *See id*.

In *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, **170 F.3d 349 (2d Cir. 1999)**, the court also invoked the estoppel doctrine to enforce an arbitration agreement against non-signatories to the agreement. In *American Bureau of Shipping* a ship classification society issued an interim certificate of

classification ("ICC") for a racing yacht.  **See *id*. at 351**.  The yacht subsequently suffered hull damage, apparently as a result of defective design and poor construction.  **See *id***.  The ship classification society brought an action to compel the yacht's builder, owners, and insurers to arbitrate their claims against the society pursuant to an arbitration clause contained in a request for class agreement incorporated by reference into the ICC.  **See *id*. at 351-52**.  The court observed that "non-signatories may be bound by arbitration agreements entered into by others." ***Id*. at 352 (citing *Thomson-CSF*, 64 F.3d at 776)**.  "This can occur pursuant to five different theories:  (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." ***Id***.  The court stated further that "[a] party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." ***Id*. at 353 (citing *Thomson-CSF*, 64 F.3d at 778-79)**.  The ship classification society contended that the owners of the yacht received "several direct benefits from the ICC," including "significantly lower insurance rates . . . and . . . the ability to sail under the French flag." ***Id***.  Thus, the court held, "it is patent that on the actual facts the Owners received direct benefits from the ICC . . . .  The Owners are hence required to arbitrate their claims against [the ship classification society]." ***Id***. The Seventh Circuit Court of Appeals has cited ***American Bureau of Shipping*** with approval.  **See *Zurich Am. Ins. Co.*, 417 F.3d at 687, 688 (citing *American Bureau of Shipping*, 170 F.3d at 352, 353)**.

Finally, in *Washington Mutual Finance Group, LLC v. Bailey*, **364 F.3d 260 (5th Cir. 2004)**, the court addressed the circumstances under which a non-signatory to an arbitration agreement can be compelled to arbitrate thereunder. The court said, "In the arbitration context, the doctrine . . . of estoppel . . . recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* **at 268 (quoting *International Paper Co.*, 206 F.3d at 418)**. "To allow . . . a plaintiff . . . to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." ***Id.*** Applying this principle, the court reversed the lower court's refusal to compel arbitration against a non-signatory plaintiff, holding that the non-signatory was required nonetheless to arbitrate a dispute with a signatory defendant, an insurance company, when the claims of the non-signatory "hing[ed] on rights arising from . . . loan and credit insurance transactions" effected through agreements containing arbitration provisions. ***Id.* at 267 n.5**. The court stated that arbitration was warranted "under the principle of equitable estoppel, which precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes as well." ***Id.* at 267**. Application of the estoppel doctrine was necessary, the court explained, to prevent the non-signatory plaintiff from taking

"inconsistent positions" by "suing based upon one part of a transaction that she says grants her rights while simultaneously attempting to avoid other parts of the same transaction that she views as a burden – namely the arbitration agreement." *Id.* at **268**.

The Court concludes that under the doctrine of estoppel SIB is required to arbitrate its claims against Hansen.  All of SIB's claims are fundamentally rooted in and dependent on rights and conditions defined in the Agreement between Hansen and Folsom.  SIB's claims are not merely logically connected to the Agreement, or indirectly related to it; to the contrary, SIB seeks direct benefits under the Agreement.  Accordingly, where SIB seeks benefits under the Agreement, it cannot disavow those portions of the Agreement, like the provision for arbitration of disputes arising out of the Agreement, with which SIB disagrees.  Instead, SIB must pursue whatever rights it has against Hansen through the arbitration process mandated under the Agreement in which SIB's claims are rooted.  To repeat, "[a] nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause." *Zurich Am. Ins. Co.,* **417 F.3d at 688**.  SIB "cannot have it both ways.  [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage . . . .  To allow [SIB] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [FAA]." *Hughes Masonry Co.,* **659 F.2d at 839.  *See also***

***Industrial Elecs. Corp. of Wis. v. iPower Distrib. Group, Inc.***, 215 F.3d 677, 680 (7th Cir. 2000) (noting in dictum that a third-party beneficiary of a contract would be bound by an arbitration provision contained in that contract); ***Redman v. Allen***, No. 05 C 6818, 2006 WL 3227890, at *2 (N.D. Ill. Nov. 3, 2006) (noting that under the estoppel doctrine, "a party who claims the benefit of a contract is estopped from asserting that he is not bound by the arbitration clause it contains."). ***Accord Wood v. PennTex Res., L.P.***, 458 F. Supp. 2d 355, 368 (S.D. Tex. 2006) (quoting ***Bridas S.A.P.I.C. v. Government of Turkmenistan***, 345 F.3d 347, 362 (5th Cir. 2003)) (noting that it is proper to "compel[ ] a nonsignatory to arbitrate with a signatory to an agreement when the nonsignatory 'knowingly exploits the agreement containing the arbitration clause.'"). Seventh Circuit precedent and precedent from sister circuits dictates that SIB, if it wishes to invoke the benefits of rights conferred by the Agreement, also must abide by the mechanism of arbitration, which is part and parcel of that same Agreement. Therefore, the Court will stay this action pending arbitration of SIB's claims against Hansen in accord with the Agreement.

### III. Conclusion

SIB's motion for remand to state court (Doc. 11) is **DENIED**.  Hansen's

motion for a stay of this litigation pending arbitration (Doc. 4) is **GRANTED**.  This

action is **STAYED** pending arbitration of SIB's claims against Hansen.

**IT IS SO ORDERED.**

Signed this 12th  day of October, 2007.


/s/      DavidRHerndon
**Chief Judge**
**United States District Court**